IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEE REED, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-03-1237 |
| | § | |
| JOHN E. POTTER, POSTMASTER | § | |
| GENERAL, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 23). The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's motion.

### I.  Case Background

Plaintiff filed this action against his (now) former employer under Title VII of the Civil Rights Act of 1964[2] ("Title VII") for race discrimination, gender discrimination, and retaliation. Plaintiff also pled intentional infliction of emotional distress ("IIED") under Texas common law.

Plaintiff began working for the United States Postal Service ("USPS") in 1986 as a full-time letter carrier.[3]  In 1997,

---

[1]  The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry No. 22.

[2]  42 U.S.C. §§ 2000e et seq.

[3]  Appendix of Exhibits to Defendant's Motion for Summary Judgment ("Defendant's Appendix"), Docket Entry No. 24, Ex. 9, Plaintiff's Deposition, p. 12; Ex. 21, Notification of Personnel Action.

Plaintiff filed an Equal Employment Opportunity ("EEO") complaint of discrimination against the USPS.[4]  Apparently, Plaintiff and the USPS settled the complaint after Plaintiff filed suit.[5]

On March 19, 1998, Plaintiff injured his back while on duty.[6] Plaintiff filed an on-the-job injury claim with the Department of Labor ("DOL").[7]  While the claim was pending, Defendant offered Plaintiff a temporary modified limited duty assignment.[8]  Limited duty assignments were available only to employees who suffered on-the-job injuries.[9]  The injured employees remained on limited duty until the DOL denied or closed their on-the-job injury claims.[10] The DOL required the USPS to create or tailor full-time jobs for

---

[4]      See id. at Ex. 1, EEO Complaint of Discrimination in the Postal Service (referring to a prior EEO complaint by case no. 4-G-770-0224-97); Ex. 9, Plaintiff's Deposition, p. 62 (stating that his prior EEO activity occurred before 1998); Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 27, Ex. 1, docket sheet for case number 4:98-cv-2100, p. 1 (indicating that Plaintiff filed a discrimination lawsuit based on the prior EEO activity in July 1998).

[5]      See Defendant's Appendix, Docket Entry No. 24, Ex. 9, Plaintiff's Deposition, p. 66; Plaintiff's Response, Docket Entry No. 27, Ex. 1, Docket for case number 4:98-cv-2100, p. 5.

[6]      See Defendant's Appendix, Docket Entry No. 24, Ex. 5, Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation.

[7]      Id.

[8]      See Plaintiff's Original Complaint, Docket Entry No. 1, ¶ 5.1.2; Defendant's Appendix, Docket Entry No. 24, Ex. 13, Declaration of Irma N. Martinez, ¶ 9.

[9]      Defendant's Appendix, Docket Entry No. 24, Ex. 13, Declaration of Irma N. Martinez, ¶ 5; see also Ex. 9, Plaintiff's Deposition, p. 74; Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 158.

[10]      Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 5.

these employees even when no funded positions were available.[11]  If an employee's injury or illness did not qualify as an on-the-job injury or if the DOL denied or closed that employee's claim, the employee was not eligible for a limited duty assignment.[12]  In such a case, the USPS would place the employee on light duty work, but did not have to create a position or to guarantee the employee full-time hours.[13]

In June 1998, the DOL notified Plaintiff that his claim was accepted and that he could be eligible for continuation-of-pay benefits.[14]  According to the letter, he qualified for a maximum benefit period of forty-five days, at which point, if he had not recovered or returned to light duty, he was eligible to claim disability compensation.[15]  Necessary medical expenses related to the injury also were covered under the claim.[16]

On October 15, 1998, Plaintiff's treating physician examined Plaintiff and wrote a letter releasing Plaintiff from all work

---

[11]    Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 5; see also Ex. 9, Plaintiff's Deposition, p. 74; Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 158.

[12]    Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 5; see also Ex. 9, Plaintiff's Deposition, p. 74.

[13]    Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 5; see also Ex. 9, Plaintiff's Deposition, pp. 74-75; Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 158.

[14]    Id. at Ex. 25, letter from DOL to Plaintiff dated June 26, 1998.

[15]    Id.

[16]    Id.

3

restrictions.[17]  The doctor wrote, "At this time, I have no reason to provide any further job restrictions. . . . [Plaintiff's] desire to alter his work activities is an administrative, social, and personal desire as opposed to a medical necessity as explained."[18]

Approximately two weeks after Plaintiff's doctor released him to full duty and without acknowledgment of the doctor's release, Plaintiff's station manager issued a letter indicating that his office determined Plaintiff's incapacity to be permanent.[19]  As a consequence, Defendant converted Plaintiff to an unassigned regular letter carrier and reposted Plaintiff's route for city-wide bidding.[20]

More than a year later, while he still was working in a limited duty status, Plaintiff suffered another back injury.[21] Plaintiff filed a notice of recurrence of disability with the DOL on December 8, 1999, the day after he was reinjured.[22]  The DOL wrote Plaintiff a letter dated December 17, 1999, expressly in

---

[17]   See id. at Ex. 14, letter from Gary C. Freeman, M.D., to the USPS dated Oct. 15, 1998.

[18]   Id.

[19]   Id. at Ex. 6, letter from the USPS to Plaintiff dated Oct. 28, 1998; see also Ex. 9, Plaintiff's Deposition, pp. 71-72.

[20]   Id. at Ex. 6, letter from the USPS to Plaintiff dated Oct. 28, 1998.

[21]   Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 11; Ex. 15, Federal Employee's Notice of Recurrence of Disability and Claim for Continuation Pay/Compensation; see also Ex. 9, Plaintiff's Deposition, p. 88.

[22]   Id. at Ex. 15, Federal Employee's Notice of Recurrence of Disability and Claim for Continuation Pay/Compensation.

4

response to a request for a change of physicians, that informed Plaintiff that his prior claim had been closed after his physician released him to full duty.[23]

On January 14, 2000, the DOL advised Plaintiff that, because the prior claim had been closed, he needed to file a new claim form, as opposed to a continuation form, for the December 1999 injury.[24] Plaintiff followed the DOL's instructions and filed a new claim form on February 18, 2000.[25] Two months later, the DOL denied the claim because Plaintiff's medical evidence did not establish that his injury was caused by his employment.[26] On April 27, 2000, the USPS also issued a letter to Plaintiff to notify him of the DOL's decision and his rights to appeal it.[27] Plaintiff requested reconsideration of the DOL's decision.[28]

Immediately after the DOL's denial of Plaintiff's claim and before he appealed the decision, Defendant changed Plaintiff's status from limited duty to light duty and scheduled him for only

---

[23]     Id. at Ex. 16, letter from the DOL to Plaintiff dated Dec. 17, 1999.

[24]     Id. at Ex. 26, letter from the DOL to Plaintiff dated Jan. 14, 2000.

[25]     See id. at Ex. 17, Notice of Occupational Disease and Claim for Compensation.

[26]     Id. at Ex. 18, letter from the DOL to Plaintiff dated Apr. 17, 2000; see also Ex. 9, Plaintiff's Deposition, pp. 91–92.

[27]     See id. at Ex. 19, letter from the USPS to Plaintiff dated Apr. 27, 2000; Ex. 9, Plaintiff's Deposition, pp. 92–93.

[28]     See id. at Ex. 9, Plaintiff's Deposition, p. 92; Ex. 13, Declaration of Irma N. Martinez, Attach. M, Notice of Decision.

four hours per day.[29]   On May 1, 2000, the day Plaintiff began working in a light duty capacity, he submitted a request to the station manager, asking to see the postmaster to discuss his job duty status.[30]  The request was never honored.[31]  At the end of May, Plaintiff submitted another request, this time, asking to see the area manager.[32]  Plaintiff did speak with the area manager, but did not receive the results he sought.[33]   In June, Plaintiff's supervisor switched Plaintiff from a four-hour midday shift to a four-hour evening shift because the later shift better suited the task he was assigned.[34]

On August 4, 2000, Plaintiff filed a discrimination complaint[35] alleging gender discrimination and retaliation.[36]   In part, his

---

[29]   See id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 11; see also Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 151 (stating that she scheduled him for four hours each day because she was only obligated to work Plaintiff as needed); pp. 164-65 (explaining that she contacted someone in Injury Compensation who told her that Plaintiff no longer qualified for limited duty).

[30]   Id. at Ex. 7, routing slip from Plaintiff to the station manager; Ex. 9, Plaintiff's Deposition, p. 30; see also Ex. 13, Declaration of Irma N. Martinez, ¶ 11.

[31]   Id. at Ex. 9, Plaintiff's Deposition, p. 46.

[32]   Id. at Ex. 8, routing slip from Plaintiff to management; Ex. 9, Plaintiff's Deposition, p. 47.

[33]   Id. at Ex. 9, Plaintiff's Deposition, pp. 47-48.

[34]   See id. at Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 150; Plaintiff's Response, Docket Entry No. 27, Ex. 3, routing slip from Linda C. Johnson to Plaintiff dated Jun. 24, 2000.

[35]   For some unexplained reason, Plaintiff dated the complaint June 5, 2000, but the EEO processing center did not receive it until August 4, 2000.  See id. at Ex. 1, EEO Complaint of Discrimination in the Postal Service, p. 1.

[36]   Id.

statement recounts events that occurred at several different
stations over at least a couple of years.[37] Plaintiff claimed that
more than one manager harassed, intimidated, and threatened him
during that time.[38] Specifically, he complained that:

> I was ordered in uniform while other light duty person
> was allowed to remain in street clothes . . . . I had
> been told by Miss [Sheryl] Taylor [, station manager,] to
> carry mail or I may lose my job . . . . I was put in
> isolation by management with [no]one to come and say
> anything to me. And[,] when someone did, Miss Linda
> Johnson [, a supervisor,] would tell them to get away
> from me. Miss Johnson sch[eduled] me to come to work at
> 10:30 on a Saturday and[,] when I showed up, she told me
> to go home untill [sic] 3:30 in which I did.[39]

Shortly after Plaintiff filed this complaint, the DOL accepted
his claim for the December 1999 on-the-job injury.[40] The USPS
received notification of the accepted claim "on or after September
8, 2000, and Mr. Reed was placed back into limited duty status as
a result."[41] One of Plaintiff's supervisors, Linda Johnson
("Johnson"), required Plaintiff to put in writing his request to go
back on limited duty.[42] On November 2, 2000, the day that Plaintiff
turned in a written request, Johnson placed Plaintiff back in

---

[37]    Id. at p. 2.

[38]    Id.

[39]    Id.; see also Ex. 9, Plaintiff's Deposition, pp. 51-54, 56-59, 141.

[40]    Id. at Ex. 13, Declaration of Irma N. Martinez, Attach. M, letter
from the DOL to Plaintiff dated Aug. 9, 2000.

[41]    Id. at Ex. 13, Declaration of Irma N. Martinez, ¶ 13.

[42]    Id. at Ex. 22, EEO Commission testimony of Linda C. Johnson, p. 204.

limited duty status and scheduled him for full-time hours.[43]

Plaintiff continued to pursue his discrimination and retaliation claim. Ultimately, he received a hearing before an EEO Commission administrative law judge ("ALJ").[44]  On August 7, 2002, the ALJ issued a decision in which he found that Plaintiff established a prima facie case of race and gender discrimination and retaliation, but that he did not provide sufficient evidence of pretext.[45]  He concluded, "I find that Mr. Reed was not the victim of race, sex, or reprisal discrimination."[46]

The record contains very little information about relations between Plaintiff and the USPS after the ALJ's decision.  However, Plaintiff continued to work for the USPS until September 2004, when he resigned and began working at Ben Taub Hospital as a chaplain.[47]

Plaintiff filed this lawsuit in April 2003, and the court dismissed the suit in August of that year due to Plaintiff's failure to prosecute.[48]  Shortly after the court dismissed the action, Plaintiff moved to have it reinstated.[49]     After

---

[43]    Id. at pp. 204-05.

[44]    See id. at Ex. 11, ALJ's Bench Decision, p. 1.

[45]    Id. at pp. 4-5, 6.

[46]    Id. at p. 6.

[47]    Id. at Ex. 9, Plaintiff's Deposition, pp. 9-11.

[48]    See Plaintiff's Original Complaint, Docket Entry No. 1; Order of Dismissal, Docket Entry No. 4.

[49]    See Motion to Reinstate, Docket Entry No. 6.

reinstatement, the case progressed slowly.   Defendant filed the pending motion in May 2005, after the close of discovery.

## II.   Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.   Id. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.   Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).   If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.   Celotex Corp., 477 U.S. at 322.   In response to a showing of lack of evidence, the party opposing summary

9

judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial.  Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs., Inc., 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.

An employee's subjective belief that he was been the victim of discrimination is insufficient to create an inference of discriminatory intent.  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999).  The court will grant summary judgment for the employer if the evidence, taken as a whole, would not allow a jury to infer that the reason for the adverse employment action, at least in part, was discriminatory. See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

### III.  Analysis

Federal employees are protected from discriminatory personnel actions based on "race, color, religion, sex, or national origin." U.S.C. § 2000e-16(a).  In an employment discrimination case, a plaintiff may prove a claim either through direct or circumstantial evidence.  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).  In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and recently modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Under the "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  Rachid, 376 F.3d at 312.  Once a plaintiff has

established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its actions. Id.; Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002). If the defendant satisfies this burden, then the presumption of discrimination dissolves.   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price, 283 F.3d at 720.

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted); Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (analyzing Title VII claim under the modified approach).   If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.   Rachid, 376 F.3d at 312.

**A.   Race and Gender Discrimination**

To establish a prima facie case of discrimination, the plaintiff must show that he: 1) is a member of a protected class; 2) was qualified for his position; 3) suffered an adverse employment action; and 4) was replaced by someone who is not a

member of the protected class to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different race. See Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim). Defendant challenges Plaintiff's evidence that he suffered an ultimate employment action. Plaintiff contends that the reduction in hours that he was scheduled to work amounted to an actionable employment decision.

Title VII actions may be brought only in response to ultimate employment decisions. Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995). Title VII was not designed to address "every decision made by employers that arguably might have some tangential effect upon those ultimate decisions." Id. at 781-82. Actionable employment decisions include "hiring, granting leave, discharging, promoting, and compensating" and those decisions that constitute "a significant change in employment status" or that cause a "significant change in benefits." Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998)(defining "tangible employment action" in the context of a sexual harassment case); Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000)(quoting Dollis, 77 F.3d at 782 and defining "adverse employment action" in the context of a retaliation claim); see also Felton v. Polles, 315 F.3d 470, 486-87 (5th Cir. 2002)(suggesting that the employment decision requirement is the same for claims of disparate treatment and claims of

13

retaliation).  Personnel decisions are not considered adverse if compensation, benefits, and level of responsibility remain the same.  Pegram v. Honeywell, 361 F.3d 272, 282 (5th Cir. 2004).

Plaintiff's claims that Defendant Postmaster did not respond to Plaintiff's request for a meeting, that Defendant told Plaintiff to wear his uniform, that Defendant told other workers not to talk to Plaintiff, and that, on one occasion, Defendant sent Plaintiff home when he arrived four hours early for his shift do not qualify as ultimate employment decisions, and are therefore not actionable under Title VII.  See Dollis, 77 F.3d at 781-82.  Plaintiff offers no evidence that these actions imposed a significant change in his employment status or any change to his compensation, benefits, or level of responsibility.  See Burlington Indus., 524 U.S. at 761; Pegram, 361 F.3d at 282.  On the other hand, Plaintiff's claim that his hours were reduced by half is actionable under Title VII.  The decision constituted a significant change in Plaintiff's employment status and greatly affected his compensation.  See Burlington Indus., 524 U.S. at 761.

Therefore, for purposes of Defendant's challenge to Plaintiff's discrimination claims, the court finds that Plaintiff has met his burden of establishing a prima facie case.[50]  The

---

[50]     Plaintiff points the court to the decision of the EEO Commission administrative law judge finding that Plaintiff established a prima facie case of discrimination for each of his claims.  The administrative law judge's decision lacks any bearing on this court's decision.  Nonetheless, the argument is irrelevant because the court assumes, as explained here, that Plaintiff can produce evidence in support of every prima facie element of his discrimination

burden, therefore, shifts to Defendant to articulate a legitimate, nondiscriminatory reason for this action. Defendant asserts that the DOL's rejection of Plaintiff's disability claim alerted Defendant to the fact that Plaintiff no longer qualified for limited duty status. Having amended Plaintiff's status to light duty, Defendant had no obligation to create full-time work for Plaintiff. Therefore, Defendant placed Plaintiff in an available light-duty position, which necessitated that Plaintiff work only evening shifts. After the DOL accepted Plaintiff's second claim for disability status, Defendant placed Plaintiff back on limited duty, which entitled him to a full-time position, regardless of need.

Finding Defendant's explanation to be a legitimate, nondiscriminatory reason for reducing the number of hours Plaintiff worked, the court next considers whether Plaintiff has shown that Defendant's proffered reason was not true, but instead was a pretext for discrimination, or that gender or racial bias motivated Defendant in addition to valid reasons. see Rachid, 376 F.3d at 312. Defendant contends that no evidence even suggests that Defendant's actions were a pretext for gender-based or race-based discrimination. Plaintiff's response contains nothing more than his belief that the proffered reason is false and his speculation regarding Defendant's true motivation. Plaintiff cites the court

and retaliation claims.

to no evidence supporting a finding of illegal motives.[51]

The ultimate factual assessment is whether Defendant discriminated against Plaintiff on the basis of race or gender. See Pratt v. City of Houston, 247 F.3d 601, 606 (5th Cir. 2001). Absent any evidence that Plaintiff's protected characteristic played a role in Defendant's decision, Plaintiff's claims of discrimination must be dismissed. Cf. Rachid, 376 F.3d at 312 (explaining that a plaintiff must either show that the defendant's reason was not the true reason for the action or that, if true, illegal animus also played a role in its decision). Therefore, the court must dismiss Plaintiff's race and gender discrimination claims.

## B. __Retaliation__

In order to establish a prima facie case for unlawful retaliation under Title VII Plaintiff must prove that: (1) he engaged in a protected activity; (2) he experienced an adverse employment action; and (3) a causal link existed between the

---

[51]     Although not argued in Plaintiff's response, Plaintiff's testimony arguably raises allegations of pretext in the form of disparate treatment. See Defendant's Appendix, Docket Entry No. 24, Ex. 9, Plaintiff's Deposition, pp. 52-54, 56-59, 99.  In order to establish pretext based on allegations of disparate treatment, Plaintiff must show that his hours were cut while another employee, not within his protected class, did not have his or her hours cut under nearly identical circumstances. Cf. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001)(explaining that the plaintiff must show that the misconduct for which she was discharged was nearly identical to that of an employee outside her protected class who was not terminated).  Plaintiff wholly failed to present sufficient evidence of nearly identical circumstances with regard to the only actionable employment decision, the reduction of hours worked.  For example, Plaintiff admitted that most, if not all, of the comparators that he identified who did not have their hours cut were on limited, not light, duty status. Defendant's Appendix, Docket Entry No. 24, Ex. 9, Plaintiff's Deposition, pp. 52-54, 56-59, 99.

16

protected activity and the adverse employment action.  <u>Walker</u>, 214 F.3d at 628-29.  As with the other discrimination claims, Defendant only challenges Plaintiff's prima facie evidence that he suffered an ultimate employment action.  For the reasons explained above the court finds that Plaintiff has met this element of the prima facie case.[52]

Assuming, as above, that Plaintiff can establish all elements of a prima facie case of retaliation, the court turns its attention once again to Defendant's articulated reason for its action.  As the court has found the reason to be legitimate and nondiscriminatory, the court moves on to Plaintiff's evidence that the decision was a pretext for retaliation.  Again, Plaintiff offers nothing in the way of evidence that the motivation was wholly or partially retaliatory.[53]  This claim must also be dismissed.

## IV.  Conclusion

Based on the foregoing, the court dismisses Plaintiff's Title

---

[52]   Although not challenged by Defendant, the court finds no evidence of a causal connection between Plaintiff's protected activity in 1997 and the reduction of hours in 2000.  Plaintiff's support for this element focuses solely on the decision-maker's awareness that he previously had filed an EEO complaint.  This fact is in dispute.  <u>See</u> Defendant's Appendix, Docket Entry No. 24, Ex. 23, EEO Commission testimony of Sheryl D. Taylor, p. 151 (claiming no knowledge); Plaintiff's Response, Docket Entry No. 27, Ex. B, Deposition of Sheryl Taylor, p. 55 (same).  Regardless, knowledge alone, especially after two years and intervening events, is far from sufficient to create a fact issue on causation.  That said, the court does not base its decision on the failure of Plaintiff's evidence in this regard because Defendant does not assert the argument.

[53]   Plaintiff also failed to show pretext based on disparate treatment.  <u>See</u> <u>supra</u> note 51.

VII claims.   The court **GRANTS** Defendant's Motion for Summary Judgment.

Reading Plaintiff's Original Complaint broadly, the court notes that Plaintiff also raised a state law claim of IIED that went unchallenged by Defendant.   However, the Civil Service Reform Act of 1978[54] provides the exclusive set of remedies for a federal employee who is harmed by adverse employment actions.[55]   <u>Bush v. Lucas</u>, 462 U.S. 367, 390 (1983); <u>Grisham v. United States</u>, 103 F.3d 24, 26 (5th Cir. 1997).   Because Plaintiff's IIED claim stems from alleged personnel actions arising out of his employment at the USPS, a federal workplace, the claim is preempted and should be dismissed.   Accordingly, the court also **DISMISSES** that claim with prejudice.

**SIGNED** in Houston, Texas, this 6th day of December, 2005.

Nancy K. Johnson
United States Magistrate Judge

---

[54]    5 U.S.C. § 7101, et seq.

[55]    The Civil Service Reform Act expressly preserves the right of a federal employee to bring an action under Title VII for employment discrimination.   <u>See</u> 5 U.S.C. § 2302(d)(1).

18